Maxwell M. Blecher  SBN 26202
Donald R. Pepperman  SBN 109809
Howard K. Alperin  SBN 158809
BLECHER COLLINS PEPPERMAN & JOYE, P.C.
515 S. Figueroa St., Suite 1750
Los Angeles, CA  90071
Telephone: (213) 622-4222
Facsimile: (213) 622-1656
Email: mblecher@blechercollins.com
Email: dpepperman@blechercollins.com
Email: halperin@blechercollins.com

Lawrence J. Hanna  SBN 117858
Daphne M. Stegman  SBN 64878
Mirren L. Stegman-Wise  SBN 297220
FULLERTON & HANNA, LLP
6311 Columbus Avenue
Van Nuys, CA  91411
Telephone: (818) 902-1454
Facsimile: (818) 901-0472
Email: fullertonhanna@sbcglobal.net

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

# WESTERN DIVISION

MORTAZA MOHAMMAD NOORZAY; MOHAMMAD OMAR KHAMOSH; MOHAMMAD AYUB NOORZAY; MINA GHAFOORZAI, individually and on behalf of all others similarly situated,

        Plaintiffs,

    vs.

TATITLEK SUPPORT SERVICES, INC., an Alaska corporation,

        Defendant.

Case No. 2:14-cv-9923

**CLASS ACTION COMPLAINT AND COLLECTIVE ACTION COMPLAINT FOR VIOLATIONS OF:**

(1) California Labor Code §§ 204, 226.7, and 512—Meal-Period and Rest-Period Violations;

(2) California Labor Code § 204—Timely Payment of Earned Wages;

(3) California Labor Code §§ 510 and 1194—Non-Payment of Overtime;

(4) 29 U.S.C. §§ 207 and 216—Non-Payment of Overtime;

(5) California Labor Code § 2802—Reimbursement of Expenses;

(6) California Labor Code § 226—Failure to Provide Accurate Information on Pay

Blecher Collins
Pepperman & Joye

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Stubs;

(7) California Labor Code §§ 201, 202, and 203—Continuing Wages;

(8)  Section 5 of California IWC Wage Order – Reporting Time & "Show Up" Pay Law; and

(9) California Business and Professions Code § 17200 *et seq.*—Unfair Competition

**[DEMAND FOR JURY TRIAL]**

Blecher Collins
Pepperman & Joye

BC
PJ

Plaintiffs Mortaza Mohammad Noorzay, Mohammad Omar Khamosh, Mohammad Ayub Noorzay, and Mina Ghafoorzai ("Plaintiffs") for their claims against Defendant Tatitlek Support Services, Inc. ("Tatitlek") complain and allege as follows:

## I.

## INTRODUCTION

1.      Defendant Tatitlek provides the United States Marine Corps in Twentynine Palms, California, with personnel (referred to as "Role Players" by Defendant Tatitlek) to interact with Marine Corps troops in realistic pre-deployment training exercises during which Tatitlek's personnel re-created what it will be like for the U.S. troops to patrol in an Afghan village.

2.      The United States Department of Defense ("DOD") executed a three hundred million ($300,000,000.00) "no bid" contract with Defendant Tatitlek to supply Role Players for a series of pre-deployment missions at the Marine Corps' Twentynine Palms base.  The training exercises were intended to prepare the soldiers for combat in Afghanistan by teaching the Marines about the culture and customs of the Afghan people.  The Marines Corps command staff credited the work of the Afghan Role Players with saving the lives of young Marines serving in Afghanistan.  Despite how essential the Afghan Role Players were to the Marines, Tatitlek decided to deceive the DOD and defraud the hard working Afghans by systematically refusing to pay the Afghans overtime and other benefits to which they were entitled by law.  The Marines never knew that Tatitlek was mistreating and underpaying the Afghans.

3.      The Afghans risked their safety and the lives of family members remaining in Afghanistan by helping the Marines.  However, Afghans developed relationships with young Marines and were determined to do all they could to protect them from harm once they were deployed to Afghanistan.  Instead of being cheated out of earned wages and other benefits, the Afghan Role Players instead

Blecher Collins
Pepperman & Joye

1  deserved bonuses.

2      4.    Tatitlek can only be described as an unrepentant recidivist.  Even after

3  investigations by Federal and state agencies regarding its violations of employment

4  law statutes and the payment of $2.4 million in settlement of a prior class action

5  based upon such violations, Tatitlek continued to ignore its legal obligations.

6  Indeed, it appears that after the first class action was settled, Tatitlek tried to select

7  Afghans who would be much less likely to assert their rights to be paid properly.

8      5.    It would be difficult to find a more egregious set of facts.  Neither

9  government orders nor prior successful class action litigation made an impact on

10  Tatitlek nor caused it to cease violating the labor rights of its employees.  In light of

11  Tatitlek's greed and intentional indifference to the rights of its employees, Plaintiffs

12  are entitled to compensatory damages.

13      6.    Defendant Tatitlek engaged in the unlawful wage and hour practice of

14  either failing to ensure that its employees took, or not allowing, its non-exempt

15  employees to take: (1) an uninterrupted 30 minute meal period when employed for a

16  work period of more than five hours per day as required by California Labor Code §

17  512; (2) a second uninterrupted 30 minute meal period when employed for a work

18  period of more than ten hours per day as required by California Labor Code §§ 512

19  and 226.7; and (3) a ten minute rest period for every four hours worked, as required

20  by California Code of Regulations 11070 subsec. 12(A); and, (4) beginning in

21  January 2014, failed to provide one hour of pay to employees for missed recovery or

22  "cooldown" periods to prevent heat illness as required by California Labor Code

23  § 226.7.  Defendant Tatitlek knew, or should have known, that its employees,

24  including Plaintiffs, were not being provided with, and were not being allowed to

25  take their meal and rest periods and Defendant Tatitlek either did not take steps to

26  address the situation, or affirmatively allowed these violations to occur.

27      7.    Defendant Tatitlek violated California Labor Code § 201 by not

28  immediately paying its employees when it released them after they completed each

Blecher Collins
Pepperman & Joye

1  specific mission for which they were hired.  Accordingly, pursuant to California

2  Labor Code § 203, Tatitlek is liable to each such employee for a waiting time

3  penalty of up to thirty day's pay for each such job assignment.

4         8.    Defendant Tatitlek engaged in the unlawful wage and hour practice of

5  failing to pay its non-exempt employees overtime in violation of Labor Code §§

6  510, 1194 and 29 U.S.C. §§ 207, 216.

7         9.    Defendant Tatitlek engaged in the unlawful wage and hour practice of

8  causing its employees to work more than six days in seven in violation of California

9  Labor Code §§ 551 and 552.

10        10.    Defendant Tatitlek also engaged in the unlawful wage and hour

11  practice of failing to reimburse its employees for business expenses incurred, in

12  violation of California Labor Code § 2802.

13        11.    Tatitlek engaged in the unlawful wage and hour practice of failing to

14  provide its employees with accurate itemized wage statements as required by Labor

15  Code § 226.

16        12.    Defendant Tatitlek violated Section 5 of California's IWC Wage Order

17  (i.e., California's "reporting time" or "show up" pay law) by requiring its employees

18  to report to work on "Day Zero" of the training exercises and not paying them the

19  greater of: (1) half the employee's usual or scheduled day's work (up to a maximum

20  of four hours), or (2) two hours at the employee's regular rate of pay.

21        13.    Defendant Tatitlek's pattern and practice of violating the wage and

22  hour laws constitutes a violation of California Business and Professions Code §§

23  17200 *et seq.*

24  **II.**

25  **<u>JURISDICTION AND VENUE</u>**

26        14.    This Court has jurisdiction over the subject matter of this civil class

27  action pursuant to 28 U.S.C. § 1332(d) and/or under 28 U.S. C. § 1331.  The

28  aggregate amount in controversy exceeds $5 million, there are approximately one

Blecher Collins
Pepperman & Joye

1   thousand (1000) or more putative class members, and the requisite minimal diversity

2   of citizenship between the parties exist.  The Plaintiffs have the requisite standing to

3   sue because they have suffered injury in fact and are entitled to pursue relief in the

4   form of statutory damages, wages and/or restitution.  As alleged more particularly

5   below, the Court has original jurisdiction of this action under the Fair Labor

6   Standards Act ("FLSA"), 29 U.S.C. § 216(b).  The Court has supplemental

7   jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

8        15.    Venue is proper in this District under 28 U.S.C. § 1391(a) and (c)

9   because a substantial part of the events or omissions giving rise to the claims herein

10   occurred in this judicial District and Defendant is subject to personal jurisdiction in

11   this District.  Defendant Tatitlek is doing business and can be found in this District

12   and elsewhere in the State of California and is therefore is subject to the personal

13   jurisdiction of this Court.

14                              **III.**

15                         **PARTIES**

16        16.    Plaintiff Mortaza Mohammad Noorzay ("Mortaza") is an individual

17   who, at all relevant times, resided in Los Angeles County in the State of California.

18   Plaintiff Mortaza was, at all relevant times, an "employee" (within the meaning of

19   the California Labor Code) of Defendant Tatitlek.

20        17.    Plaintiff Mohammad Omar Khamosh ("Omar") is an individual who, at

21   relevant times, resided in Alameda County in the State of California. Plaintiff  Omar

22   was, at all relevant times, an "employee" (within the meaning of the California

23   Labor Code) of Defendant Tatitlek.

24        18.    Plaintiff Mohammad Ayub Noorzay ("Ayub") is an individual who, at

25   all relevant times, resided in Los Angeles County in the State of California. Plaintiff

26   Mohammad Ayub Noorzay was, at all relevant times, an "employee" (within the

27   meaning of the California Labor Code) of Defendant Tatitlek.

28

*Blecher Collins Pepperman & Joye*

19.     Plaintiff Mina Ghafoorzai ("Mina") is an individual who, at all relevant times, resided in Solano County in the State of California. Plaintiff Mina was, at all relevant times, an "employee" (within the meaning of the California Labor Code) of Defendant Tatitlek.

20.     Plaintiffs are informed and believe, and thereon allege, that Defendant Tatitlek is and, at all times mentioned herein, was a corporation or other business entity qualified to and doing business in the State of California. Plaintiffs are further informed and believe, and thereon allege, that Defendant Tatitlek is and was, at all relevant times, an "employer" within the meaning of the California Labor Code. Defendant Tatitlek is an Alaska corporation.

## IV.

## FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS

21.     As documented by the Associated Press ("AP"), via MSNBC, the Marine Corps built a $170 million urban training center that consisted of a 1,560-building facility at Twentynine Palms. This facility allowed troops to practice and refine skills that were used in Afghanistan and around the world. The Marine Corps opened a variety of mock Afghan villages. These villages are where a majority of the training missions in which the Role Players participated occurred.

22.     The mock cities and villages cover 274 acres of desert and include fake markets, hotels, and other business. The missions, as documented by AP and as described by the Plaintiffs, included humanitarian relief, peacekeeping, police work, and direct combat. The facility also includes 1,900 feet of underground tunnels, a manmade riverbed, and dozens of courtyards and compounds.

23.     Tatitlek is a for-profit Alaska Native Corporation which qualifies as a Small Business Administration ("SBA") 8(a) Small Disadvantaged Business. As an SBA 8(a) company, Tatitlek was able to enter into "sole source" or "no bid" contract negotiations with the Marine Corps to supply Role Players for a series of

1  discrete pre-deployment missions at the Marine Corps' Twentynine Palms military

2  base, including Mission Rehearsal Exercises ("MRX").

3      24.    Tatitlek signed a three hundred million dollar ($300,000,000) contract

4  with the Department of Defense to provide Role Players to the Marines at the

5  Twentynine Palms base. The work done by the individual Afghans varied but

6  included role playing exercises, as well as teaching the Marines about the culture

7  and customs of the Afghan people.

8      25.    Pursuant to the terms of that contract, from 2008 to 2014, Plaintiffs

9  were recruited by Tatitlek to work with the Marine Corps in order to prepare the

10  soldiers for combat in Afghanistan.

11      26.    From 2008 to early 2011, approximately 1000 to 1200 Plaintiffs and

12  putative class members Afghans worked at Twentynine Palms.  During the later part

13  of 2011 to spring 2014, approximately 500 to 600 Afghans worked at Twentynine

14  Palms.

15      27.    The Twentynine Palms base is located near the Mojave Desert and, as

16  would be expected in the desert, it can be very hot during the day and very cold at

17  night.  Winters can be especially brutal if you are not accustomed to that climate, or

18  you do not have the proper clothing and supplies to survive in that climate.

19      28.    As part of the role playing exercises, Plaintiffs assumed a variety of

20  roles including Afghanistan National Army soldiers, farmers, villagers, linguists and

21  military police.  The exercises included scenarios such as villagers co-existing with

22  the Marines, the Marines taking over a "hostile" village, the Marines driving out

23  villagers and then allowing them to return to the village, fire fights within the village

24  against the enemy, and helicopter related missions.

25      29.    The Afghan Role Players also taught the Marines how to behave and

26  what to expect when stationed in Afghanistan.  For example, the Afghan Role

27  Players explained how to act during meal times and described the various meal

28  restrictions.

30.     The Marine Corps praised these exercises and emphasized how integral these exercises and Role Players were in keeping Marines safe overseas and establishing better relationships with the people of Afghanistan.

31.     The Afghans generally were told about the employment opportunity at Twentynine Palms by word-of-mouth, at job fairs, or by a man named Ajmal.  Most were eventually contacted by Ajmal, or someone else from Tatitlek, and were told they would be doing role playing exercises with the Marine Corps and would be teaching them about Afghan culture.  They were generally told they would play the role of a civilian, an army soldier, a military police officer, or a linguist.  The only specific job description was that they would be Role Players.

32.     During the time many of the Plaintiffs were participating in the role playing exercises, the buildings which represented the villages were actually large metal shipping containers.  These shipping containers had no windows and no doors.  Furthermore, during the summer days they were extremely hot and during the night they were extremely cold.

33.     The Role Players participated in a variety of missions, each with a separate designated name.  Role Players were hired separately for each mission and there were no guarantees of being selected for any future missions.

34.     Some of the missions at Twentynine Palms were described as "24 hour" missions, which required that the Role Players remain in the villages for the duration of the mission.  While they were in the villages, the Role Players were required to be available to the Marines at any time, day or night.  The Marines regularly interrupted the Role Players' sleep and meal times.  The Role Players were on duty for the entire mission and never had any free time.

35.     During other missions, the Role Players returned each night to the Forward Operating Base ("FOB"), where they slept and ate some meals.  However, even when they returned to the FOB, the Role Players still were considered to be "on call," which meant being available to the Marines at any time.  As a result, the

1  Role Players usually did not enjoy at least five hours uninterrupted sleep, and were
2  not allowed free time.

3      36.    The original training program to which many of the Plaintiffs were
4  assigned was called Mojave Viper.  After an expansion in 2010, training included
5  Marines scrambling through a maze of mud walls leading to mosques, schools, and
6  carpet sellers, as Hollywood-style explosions were set off.

7      37.    MRX missions, which were classified under Mojave Viper, were
8  described as "24/7" missions because of the duration of those missions. Throughout
9  the length of the mission, the Role Players were required to live in a village and to
10  be available to the Marines at all times.  All their time was spent out in the field.

11      38.    During Clear, Hold and Build Exercise ("CHBEX") missions, the Role
12  Players returned to the FOB at the end of each day.  CHBEX missions worked
13  together with the MRX missions; half the contracted time was labeled MRX and
14  half was labeled CHBEX.  These two missions together were labeled as Advisory
15  Training Group ("ATG") missions.  During Situational Training Exercise ("STX")
16  missions, the Role Players returned to the FOB at the end of each day.

17      39.    Some Role Players were told to bring some clothes for cold weather
18  and a sleeping bag. Other Role Players were not instructed to bring any supplies or
19  personal belongings. Once the Role Players arrived on base, many found they were
20  not prepared for the harsh weather at Twentynine Palms.  The weather was freezing
21  cold and the Plaintiffs quickly realized that they should have brought a variety of
22  supplies such as: (1) blankets; (2) cold weather clothes; (3) cold weather boots; (4)
23  flashlights; (5) pillows; (6) survival gear; and, (7) personal toiletries.  They were not
24  allowed to shop for the needed items at the base store, nor were they permitted to
25  leave the base to shop.  As a result, Plaintiffs were forced to live for as long as two
26  weeks under intolerable conditions.

27      40.    California law provides that sleeping time while on duty constitutes
28  compensable 'hours worked' unless both of the following requirements are satisfied:

1   (1) the employer and employee enter into an agreement to exclude from hours

2   worked a bona fide regularly scheduled sleeping period; and (2) the following non-

3   waiveable conditions are satisfied: (a) the employee is able to enjoy an uninterrupted

4   five hours of sleep; and (b) any interruptions of the sleeping periods by a call to duty

5   are counted as hours worked.  Because it neither entered into such an agreement

6   with its employees nor satisfied the non-waiveable conditions (i.e., its employees

7   were neither able to enjoy an uninterrupted five hours of sleep nor were they

8   compensated for time worked when their sleep was interrupted by a call to duty),

9   Defendant Tatitlek was legally required to, but did not, compensate the Role Players

10  for sleep time.

11       41.    For approximately the first two years, Tatitlek told the Role Players the

12  numbers of hours for which they would be paid prior to the time they began working

13  on the mission.  Those were the preset hours paid, regardless of actual hours

14  worked.  During the last three years of the contract, Tatitlek did not inform the Role

15  Players in advance the number of hours for which they would be paid.  Instead, at

16  the end of the mission, the Role Players were required to line up before Tatitlek

17  employees who were seated at a table.  Each role player was given a preprinted

18  timesheet and was instructed by Tatitlek employees to sign the timesheet.  They

19  were given little or no time to review the timesheets for accuracy.  Instead, Tatitlek

20  made it clear to the Role Players that if they refused to sign the timesheets, or

21  attempted to change the printed hours, they likely would not be hired for any future

22  missions.

23       42.    Although Tatitlek stated that Role Players were entitled to correct, and

24  strike out, any inaccurate hours reflected in their timesheets, such corrections either

25  were overruled by management, or the plaintiffs were told they would not be

26  selected for any future missions if they insisted upon correcting the time sheets to

27  reflect actual hours worked.  The Role Players could not afford to be rejected for

28  future missions so they rarely made any more complaints about incorrect timesheets.

Blecher Collins
Pepperman & Joye

-9-

43.     Tatitlek states on the preprinted timesheets that the Role Players were given approximately six hours per day for sleep per mission, ignoring the fact that the Role Players' sleep frequently was interrupted by the Marines.  Whether they were assigned to live in the village, or the FOB, the Plaintiffs were not compensated for all the time they were required to work.

44.     Tatitlek's policy and practice was to intentionally and consistently deny payment to the Plaintiffs for all hours worked, including overtime compensation. This illegal conduct violates both the Labor Code and the Industrial Welfare Commission ("IWC") requirements.

45.     Companies may delete time from the employees' time records in an effort to keep payroll hours low and increase a company's profits.  This illegal doctoring of hourly employees' time records is often referred to as 'time shaving.'

46.     Hours worked in excess of 40 hours were shifted to the next week or next pay period to avoid paying double overtime.  For example, if the Role Players worked 50 hours, ten hours were taken from that week and moved to the following week.  Such conduct also violates the California Labor Code.

47.     Tatitlek also failed to provide meal, rest or "cool down recovery periods" in violation of Cal. Lab. Code §§ 226.7, 512, and 11070.

48.     The applicable IWC Wage Order requires that employers provide their employees with a ten-minute rest period for every four hours worked or major fraction thereof, so long as the employees work more than three-and-a-half hours. Cal. Code Regs. § 11070 subsec. 12(A).  In other words, employers are required to provide their employees with one ten-minute break for shifts of three-and-a-half hours to six hours in length, and a second ten-minute rest break for shifts of more than six hours up to ten hours.  Additionally, the applicable IWC Wage Order requires that employers provide their employees with a 30 minute meal period for any shift longer than five hours and a second 30 minute meal period for any shift longer than ten hours.  Id., subsec. 11(A).

49.     The right to meal and rest periods has been codified in §§ 204, 226.7, and 512 of the California Labor Code.  Section 512(a) provides:

"An employer may not employ an employee for a work period of more than five hours per day without providing the employee with a meal period of not less than 30 minutes, except that if the total work period per day of the employee is no more than six hours, the meal period may be waived by mutual consent of both the employer and employee.  An employer may not employ an employee for a work period of more than 10 hours per day without providing the employee with a second meal period of not less than 30 minutes, except that if the total hours worked is not more than 12 hours, the second meal period may be waived by mutual consent of the employer and the employee only if the first period was not waived."

Section 226.7 provides:

"If an employer fails to provide an employee a meal period or rest period in accordance with an applicable order of the Industrial Welfare Commission, the employer shall pay the employee one additional hour of pay at the employee's regular rate of compensation for each work day that the meal or rest period is not provided."

Section 204 provides that "[a]ll wages … earned by any person in any employment are due and payable twice during each calendar month, on days designated in advance by the employer as the regular paydays." *Id.* § 204(a). Compensation for missed meal and rest periods constitutes wages within the meaning of § 204 of the Labor Code.

50.     Defendant Tatitlek engaged in the unlawful wage and hour practice of either failing to provide or not allowing its non-exempt employees, (including Plaintiffs and the Class Members) to take: (1) an uninterrupted 30 minute meal period when employed for a work period of more than five hours per day as required by Labor Code §§ 512 and 226.7; (2) a second uninterrupted 30 minute meal period when employed for a work period of more than ten hours per day as required by

Labor Code §§ 512 and 226.7; and (3) a ten minute rest period for every four hours worked.  In this regard, Defendant Tatitlek knew or should have known that its employees were not being provided with and not being allowed to take their meal and rest periods and Defendant Tatitlek did not take steps to address the situation.

51.     Defendant Tatitlek violated Section 5 of California's IWC Wage Order (i.e., California's "reporting time" or "show up" pay law by requiring its employees to report to work on "Day Zero" of the training exercises and not paying them the greater of: (1) half the employee's usual or scheduled day's work (up to a maximum of four hours), or (2) two hours at the employee's regular rate of pay.

52.     Defendant Tatitlek violated Labor Code § 201 by not immediately paying its employees when it released them after they completed each specific mission for which they were hired.  Accordingly, pursuant to Labor Code § 203, Defendant Tatitlek is liable to each such employee for a waiting time penalty of up to 30 day's pay for each such mission.

53.     Defendant Tatitlek required its employees to spend the night in re-worked metal shipping containers that did not have electricity or lighting.  As a consequence, the employees necessarily and reasonably had to purchase lanterns, flashlights, and batteries to use for lighting at night.  Defendant Tatitlek violated Labor Code § 2802 by not indemnifying the Role Players for these expenses.

54.     Plaintiffs are informed and believe and thereon allege that at all times herein mentioned, Defendant Tatitlek was advised by skilled and knowledgeable lawyers and advisors who were aware of California's employment wage and hours laws, about the requirements of California law.

55.     Defendant Tatitlek knew, or should have known, that Plaintiffs and other members of the putative classes were not being paid overtime, were not receiving itemized wage statements, were not receiving legally mandated meal and rest periods, were not receiving one hour of pay on the occasions when they did not receive or were not allowed to take their legally mandated meal and rest periods, did

1  not receive their total wages owed following the termination of their employment

2  and were not paid for "Zero Days," because, among other things, Defendant

3  Tatitlek's officers, managers, supervisors, agents and employees were responsible

4  for and/or witnessed such events.

5        56.    Tatitlek has an established a pattern and practice of violating wage and

6  hour laws.  In a prior class action lawsuit, St. John v. Tatitlek Support Services, Inc.,

7  Case No. # CV08-01909 JZ(RZx) -- Central District of California-Eastern Division,

8  the plaintiffs alleged that Tatitlek initially improperly classified individuals as

9  independent contractors, and thereafter as salaried exempt employees (instead of

10  non-exempt hourly employees).  As a result, Tatitlek failed to pay them overtime in

11  violation of Federal and California law and otherwise failed to comply with

12  California's wage and hour laws applicable to non-exempt hourly employees.  After

13  investigations by the U.S. Department of Labor and the California Labor

14  Commissioner, Tatitlek claimed that, as of January 1, 2008, it was complying with

15  applicable wage and hour laws.  However, as set forth in the prior class action and in

16  this Complaint, Tatitlek continues to flagrantly violate wage and hour laws.

17        57.    During the prior class action lawsuit, the plaintiffs noted that under the

18  Contract Work Hours and Safety Standards Act, federal contractors must pay their

19  employees "at a rate not less than one and one-half times the basic rate of pay, for

20  all hours worked in excess of 40 hours in the workweek." 40 U.S.C. § 3702(a).  This

21  law sets minimum wages; it does not preempt state laws requiring higher wages.  29

22  U.S.C. § 218(a).

23        58.    Tatitlek eventually settled that case and the settlement covered "all

24  persons performing services as Role Players, foreign language specialists, civilians

25  on the battlefield and the like, whatever the job title, whether as independent

26  contractors or professionals, exempt or non-exempt employees, at the United States

27  Marine Corps Base at Twentynine Palms, California or at any other site pursuant to

28

Blecher Collins
Pepperman & Joye

-13-

1    the contract between TSSI and the United States Marine Corps between November

2    6, 2004 and January 24, 2011." *Notice of Class Action Settlement.*

3                                              **V.**

4              **CLASS ACTION AND COLLECTIVE ACTION ALLEGATIONS**

5            59.    Plaintiffs bring the First, Second Third, Fifth, Sixth, Seventh, and

6    Eighth Claims for Relief alleged below pursuant to Rule 23 of the Federal Rules of

7    Civil Procedure.  Rule 23 provides:

8            (a)    Prerequisites.  One or more members of a class may sue or be

9            sued as representative parties on behalf of all members only if : (1) the class is

10          so numerous that joinder of all members if impracticable; (2) there are

11          questions of law or fact common to the class; (3) the claims or defenses of the

12          representative parties are typical of the claims or defenses of the class; and (4)

13          the representative parties will fairly and adequately protect the interests of the

14          class.

15          (b)    Types of Class Actions.  A class action may be maintained if

16          Rule 23(a) is satisfied and if:…(3) the court finds that the questions of law or

17          fact common to class members predominate over any questions affecting only

18          individual members, and that a class action is superior to other available

19          methods for fairly and efficiently adjudicating the controversy.

20

21          Fed. R. Civ. Proc. 23.  Pursuant to subdivisions (a) and (b)(3) of Rule 23,

22    Plaintiffs seek to represent the following Classes:

23          • **Meal-Period Class**:  All hourly-paid individuals employed by

24            Defendant Tatitlek at the Twentynine Palms Marine Base as Afghan

25            Role Players between January 25, 2011 and the filing of this

26            Complaint, who worked more than six hours during any given shift.

27          • **Rest-Period Class**:  All hourly-paid individuals employed by

28            Defendant Tatitlek at the Twentynine Palms Marine base as Afghan

Blecher Collins
Pepperman & Joye

Role Players between January 25, 2011 and the filing of this Complaint, who worked more than three-and-a-half hours but fewer than four hours during any given shift, or who worked more than six hours but fewer than eight hours during any given shift.

- **Miscalculation Class:**  All hourly-paid individuals employed by Defendant Tatitlek at the Twentynine Palms Marine base as Afghan Role Players between January 25, 2011 and the filing of this Complaint, who worked overtime during a pay period but were not paid overtime or who worked more than ten hours during any given shift.

- **Reimbursement Class:**  All hourly-paid individuals employed by Defendant Tatitlek at the Twentynine Palms Marine base as Afghan Role Players between January 25, 2011 and the filing of this Complaint, who were not reimbursed for business expenses.

- **Inaccurate Wage Statement Class**:  All hourly-paid individuals employed by Defendant Tatitlek at the Twentynine Palms Marine base as Afghan Role Players between January 25, 2011 and the filing of this Complaint, who were not provided with accurate itemized wage statements as required by Labor Code § 226.

- **Continuing Wages Class**:  All hourly-paid individuals employed by Defendant Tatitlek at the Twentynine Palms Marine base as Afghan Role Players between January 25, 2011 and the filing of this Complaint, who were not paid his or her full wages: (a) at the time of the termination of each mission assignment for which he/she was hired or (b) within 72 hours if the termination was voluntary.

- **Off-the-Clock or "Day Zero" Class**:  All hourly-paid individuals employed by Defendant Tatitlek at the Twentynine Palms Marine base as Afghan Role Players between January 25, 2011 and the filing of this Complaint, who were required to report to work on "Day Zero" of the

-15-

training exercises and who were not paid the greater of: (1) half the employee's usual or scheduled day's work (up to a maximum of four hours), or (2) two hours at the employee's regular rate of pay.

60.     Plaintiffs bring the Fourth Claim for Relief alleged below on a collective-action basis pursuant to the FLSA.  The FLSA permits an employee to bring an action for unpaid wages on "behalf of himself [or herself]…and other employees similarly situated," so long as all similarly situated employees "give [their] consent in writing to become …a party."  29 U.S.C. § 216(b).  Pursuant to the FLSA, Plaintiffs seek to represent the following Class:

- **Federal-Law Overtime Class**:  Since the period of time commencing three years prior to the Complaint, all hourly-paid individuals employed by Defendant Tatitlek at the Twentynine Palms Marine base as Afghan Role Players who worked overtime in a pay period but were not paid for the overtime worked.  (Plaintiffs' consent to join this action are attached hereto as **Exhibit 1**.)

61.     Plaintiffs reserve the right to modify the definition of the Classes (or add one or more Classes or Sub-classes) after further discovery.

62.     Specifically excluded from the Classes are Defendant, any entity in which it has a controlling interest, any of its parents, subsidiaries, and/or affiliates; any of their officers and directors; and any members of its immediate families.

63.     Plaintiff Mortaza Mohammad Noorzay's claims are typical of those of the alleged Classes.

64.     In or about August 2009, Mortaza began employment with Defendant Tatitlek.  Mortaza's employment has lasted through the present, although there are no scheduled missions.  At no time before, during, or after these periods of employment did Mortaza enter into a written agreement with Defendant Tatitlek with respect to the taking of on-the-job paid meal period.

65.     During his employment, Mortaza was a Role Player and Tribal Leader.

-16-

66.     Defendant Tatitlek failed to provide Mortaza with accurate itemized wage statements as required by Labor Code § 226.

67.     During each period of employment, Mortaza worked more than eight hours in a day and more than 40 hours in a week, and Defendant Tatitlek failed to pay Mortaza overtime pay.

68.     Defendant Tatitlek engaged in the unlawful wage and hour practice of causing Mortaza to work more than six days in seven in violation of Labor Code §§ 551 and 552.

69.     Defendant Tatitlek either failed to provide or regularly failed to allow Mortaza to take: (1) an uninterrupted 30 minute meal period when employed for a work period of more than five hours per day as required by Labor Code §§ 512; (2) a second uninterrupted 30 minute meal period when employed for a work period of more than ten hours per day as required by California Labor Code § 512; (3) a ten minute rest period for every four hours worked, as required by California Code Regulations 11070 subsec. 12(A); and, (4) beginning in January 2014, failed to provide one hour of pay to employees for missed recovery or "cooldown" periods to prevent heat illness as required by California Labor Code § 226.7.  In this regard, Defendant Tatitlek knew, or should have known, that its employees, including Plaintiff Mortaza, were not being provided with or were not being allowed to take their meal and rest periods and Defendant Tatitlek did not take steps to address the situation or affirmatively allowed these violations to occur.

70.     During Mortaza's employment, Defendant Tatitlek violated Section 5 of California's IWC Wage Order (i.e., California's "reporting time" or "show up" pay law) by requiring Mortaza to report to work on "Day Zero" of the training exercises and not paying him the greater of: (1) half the employee's usual or scheduled day's work (up to a maximum of four hours), or two hours at the employee's regular rate of pay.

71.     Defendant Tatitlek violated Labor Code § 201 by not immediately paying Mortaza when it released him after he completed each specific job assignment for which he was hired.  Accordingly, pursuant to Labor Code Section 203, Defendant Tatitlek is liable to Mortaza for a waiting time penalty of up to 30 days' pay for each such job assignment.

72.     Defendant Tatitlek required Mortaza to spend the night in re-worked Connex metal boxes that did not have electricity or lighting.  As a consequence, Mortaza necessarily and reasonably had to purchase items (i.e., lanterns, flashlights, and batteries) to use for lighting at night.  Defendant Tatitlek violated Labor Code § 2802 by not indemnifying or reimbursing Mortaza for these expenses.

73.     California law provides that sleeping time while on duty constitutes compensable "hours worked" unless both of the following requirements are satisfied: (1) the employer and Mortaza enter into an agreement to exclude from hours worked a bona fide regularly scheduled sleeping period; and (2) the following non-waiveable conditions are satisfied: (a) Mortaza is able to enjoy an uninterrupted 5 hours of sleep; and (b) any interruptions of the sleeping period by a call to duty are counted as hours worked.  Because Defendant Tatitlek neither entered into such an agreement with Mortaza nor satisfied the non-waiveable condition (i.e., Mortaza was neither able to enjoy an uninterrupted five hours of sleep nor was he compensated for time worked when his sleep was interrupted by a call to duty), it was obligated to, but did not, compensate Mortaza for sleep time.

74.     In violation of Labor Code §§201 and 203, Defendant Tatitlek did not pay Mortaza his total wages owed following the termination of his employment. Hence, a waiting time penalty, in addition to the wages owed, in the amount equal to 30 days' of his total wages is due to Mortaza.

75.     Plaintiff Mohammad Omar Khamosh's claims are typical of those of the alleged Classes.

76.     In or about August 2009, Omar began employment with Defendant Tatitlek.  Omar's employment continues through the present, although there are no missions scheduled.

77.     At no time before, during, or after these periods of employment did Omar enter into a written agreement with Defendant Tatitlek with respect to the taking of an on-the-job paid meal period.

78.     During his employment, Omar was a Role Player.  More specifically, military police or Afghanistan Army.

79.     Defendant Tatitlek failed to provide Omar with accurate itemized wage statements as required by Labor Code § 226.

80.     During each period of employment, Omar worked more than eight hours in a day and more than 40 hours in a week and Defendant Tatitlek failed to pay Omar overtime pay.

81.     Defendant Tatitlek engaged in the unlawful wage and hour practice of causing Omar to work more than six days in seven in violation of Labor Code §§ 551 and 552. Defendant Tatitlek either failed to provide or regularly failed to allow Omar to take: (1) an uninterrupted 30 minute meal period when employed for a work period of more than five hours per day as required by Labor Code §§ 512; (2) a second uninterrupted 30 minute meal period when employed for a work period of more than ten hours per day as required by California Labor Code § 512; (3) a ten (10) minute rest period for every four hours worked, as required by California Code Regulations 11070 subsec. 12(A); and, (4) beginning in January 2014, failed to provide one hour of pay to employees for missed recovery or "cooldown" periods to prevent heat illness as required by California Labor Code § 226.7.  In this regard, Defendant Tatitlek knew or should have known that its employees, including Plaintiff Omar, were not being provided with or were not being allowed to take their meal and rest periods and Defendant Tatitlek did not take steps to address the situation or affirmatively allowed these violations to occur.

Blecher Collins
Pepperman & Joye

82.     During Omar's employment, Defendant Tatitlek violated Section 5 of California's IWC Wage Order (i.e., California's "reporting time" or "show up" pay law) by requiring Omar to report to work on "Day Zero" of the training exercises and not paying him the greater of: (1) half the employee's usual or scheduled day's work (up to a maximum of four hours), or (2) two hours at the employee's regular rate of pay.

83.     Defendant Tatitlek violated Labor Code § 201 by not immediately paying Omar when it released him after he completed each specific job assignment for which he was hired.  Accordingly, pursuant to Labor Code § 203, Defendant Tatitlek is liable to Omar for a waiting time penalty of up to 30 days' pay for each such job assignment.

84.     Defendant Tatitlek required Omar to spend the night in re-worked Connex metal boxes that did not have electricity or lighting.  As a consequence, Omar necessarily and reasonably had to purchase items (i.e., lanterns, flashlights, and batteries) to use for lighting at night.  Defendant Tatitlek violated Labor Code § 2802 by not indemnifying or reimbursing Omar for these expenses.

85.     California law provides that sleeping time while on duty constitutes compensable "hours worked" unless both of the following requirements are satisfied: (1) the employer and Omar enter into an agreement to exclude from hours worked a bona fide regularly scheduled sleeping period; and (2) the following non-waiveable conditions are satisfied: (a) Omar is able to enjoy an uninterrupted 5 hours of sleep; and (b) any interruptions of the sleeping period by a call to duty are counted as hours worked.  Because Defendant Tatitlek neither entered into such an agreement with Omar nor satisfied the non-waiveable condition (i.e., Omar was neither able to enjoy an uninterrupted five hours of sleep nor was he compensated for time worked when his sleep was interrupted by a call to duty), it was obligated to, but did not, compensate Omar for sleep time.

Blecher Collins
Pepperman & Joye

BC
PJ

86.    In violation of Labor Code §§ 201 and 203, Defendant Tatitlek did not pay Omar his total wages owed following the termination of his employment. Hence, a waiting time penalty, in addition to the wages owed, in the amount equal to 30 days of his total wages is due to Omar.

87.    Plaintiff Mohammad Ayub Noorzay's claims are typical of those of the alleged Classes.

88.    In or about August 2009, Ayub began employment with Defendant Tatitlek.  Ayub's employment continues through the present, although there are no missions scheduled.  At no time before, during, or after these periods of employment did Ayub enter into a written agreement with Defendant Tatitlek with respect to the taking of an on-the-job paid meal period.

89.    During his employment, Ayub was a Role Player.

90.    Defendant Tatitlek failed to provide Ayub with accurate itemized wage statements as required by Labor Code § 226.

91.    During each period of employment, Ayub worked more than eight hours in a day and more than 40 hours in a week and Defendant Tatitlek failed to pay Ayub overtime pay.

92.    Defendant Tatitlek engaged in the unlawful wage and hour practice of causing Uncle to work more than six days in seven in violation of Labor Code §§ 551 and 552.

93.    Defendant Tatitlek either failed to provide or regularly failed to allow Ayub to take: (1) an uninterrupted 30 minute meal period when employed for a work period of more than five hours per day as required by Labor Code §§ 512; (2) a second uninterrupted 30 minute meal period when employed for a work period of more than ten hours per day as required by California Labor Code § 512; (3) a ten minute rest period for every four hours worked, as required by California Code Regulations 11070 subsec. 12(A); and, (4) beginning in January 2014, failed to provide one hour of pay to employees for missed recovery or "cooldown" periods to

Blecher Collins
Pepperman & Joye

1   prevent heat illness as required by California Labor Code § 226.7.  In this regard,

2   Defendant Tatitlek knew, or should have known, that its employees, including

3   Plaintiff Ayub, were not being provided with or were not being allowed to take their

4   meal and rest periods and Defendant Tatitlek did not take steps to address the

5   situation or affirmatively allowed these violations to occur.

6       94.   During his employment, Defendant Tatitlek violated Section 5 of

7   California's IWC Wage Order (i.e., California's "reporting time" or "show up" pay

8   law) by requiring Ayub to report to work on "Day Zero" of the training exercises

9   and not paying him the greater of: (1) half the employee's usual or scheduled day's

10  work (up to a maximum of four hours), or (2) two hours at the employee's regular

11  rate of pay.

12      95.   Defendant Tatitlek required Ayub to spend the night in re-worked

13  Connex metal boxes that did not have electricity or lighting.  As a consequence,

14  Ayub necessarily and reasonably had to purchase items (i.e., lanterns, flashlights,

15  and batteries) to use for lighting at night.  Defendant Tatitlek violated Labor Code §

16  2802 by not indemnifying or reimbursing Ayub for these expenses.

17      96.   California law provides that sleeping time while on duty constitutes

18  compensable "hours worked" unless both of the following requirements are

19  satisfied: (1) the employer and Ayub enter into an agreement to exclude from hours

20  worked a bona fide regularly scheduled sleeping period; and (2) the following non-

21  waiveable conditions are satisfied: (a) Ayub is able to enjoy an uninterrupted five

22  hours of sleep; and (b) any interruptions of the sleeping period by a call to duty are

23  counted as hours worked.  Because Defendant Tatitlek neither entered into such an

24  agreement with Ayub nor satisfied the non-waiveable condition (i.e., Ayub was

25  neither able to enjoy an uninterrupted five hours of sleep nor was he compensated

26  for time worked when his sleep was interrupted by a call to duty), it was obligated

27  to, but did not, compensate Ayub for sleep time.

28

Blecher Collins
Pepperman & Joye

-22-

97.     In violation of Labor Code §§ 201 and 203, Defendant Tatitlek did not pay Ayub his total wages owed following the termination of his employment. Hence, a waiting time penalty, in addition to the wages owed, in the amount equal to 30 days of his total wages is due to Ayub.

98.     Plaintiff Mina Ghafoorzai's claims are typical of those of the alleged Classes.

99.     In or about December 2008 Ghafoorzai began employment with Defendant Tatitlek.  Ghafoorzai's employment terminated in June 2014.  At no time before, during, or after these periods of employment did Ghafoorzai enter into a written agreement with Defendant Tatitlek with respect to the taking of on-the-job paid meal period.

100.    During her employment, Ghafoorzai was a Role Player and translator.

101.    Defendant Tatitlek failed to provide Ghafoorzai with accurate itemized wage statements as required by Labor Code § 226.

102.    During each period of employment, Ghafoorzai worked more than eight hours in a day and more than 40 hours in a week, and Defendant Tatitlek failed to pay Ghafoorzai overtime pay.

103.    Defendant Tatitlek engaged in the unlawful wage and hour practice of causing Ghafoorzai to work more than six days in seven in violation of Labor Code §§ 551 and 552.

104.    Defendant Tatitlek either failed to provide or regularly failed to allow Ghafoorzai to take: (1) an uninterrupted 30 minute meal period when employed for a work period of more than five hours per day as required by Labor Code § 512; (2) a second uninterrupted 30 minute meal period when employed for a work period of more than ten hours per day as required by California Labor Code § 512; (3) a ten minute rest period for every four (4) hours worked, as required by California Code Regulations 11070 subsec. 12(A); and, (4) beginning in January 2014, failed to provide one hour of pay to employees for missed recovery or "cooldown" periods to

prevent heat illness as required by California Labor Code § 226.7.  In this regard, Defendant Tatitlek knew or should have known that its employees, including Plaintiff Ghafoorzai, were not being provided with or were not being allowed to take their meal and rest periods and Defendant Tatitlek did not take steps to address the situation or affirmatively allowed these violations to occur.

105.   During her employment, Defendant Tatitlek violated Section 5 of California's IWC Wage Order (i.e., California's "reporting time" or "show up" pay law) by requiring Ghafoorzai to report to work on "Day Zero" of the training exercises and not paying him/her the greater of: (1) half the employee's usual or scheduled days work (up to a maximum of four hours), or (2) two hours at the employee's regular rate of pay.

106.   Defendant Tatitlek violated Labor Code § 201 by not immediately paying Ghafoorzai when it released him/her after she completed each specific mission for which she was hired.  Accordingly, pursuant to the Labor Code § 203, Defendant Tatitlek is liable to Ghafoorzai for a waiting time penalty of up to 30 days pay for each such mission.

107.   Defendant Tatitlek required Ghafoorzai to spend the night in re-worked Connex metal boxes that did not have electricity or lighting.  As a consequence, Ghafoorzai necessarily and reasonably had to purchase items (i.e., lanterns, flashlights, and batteries) to use for lighting at night.  Defendant Tatitlek violated Labor Code § 2802 by not indemnifying or reimbursing Ghafoorzai for these expenses.

108.   In violation of Labor Code §§ 201 and 203, Defendant Tatitlek did not pay Ghafoorzai her total wages owed following the termination of her employment.  Hence, a waiting time penalty, in addition to the wages owed, in the amount equal to the 30 days of his total wages is due to Ghafoorzai.

109.   This action may properly be brought and maintained as a class action pursuant to Fed. R. Civ. P. 23(a) and (b).  This class action satisfies the

1  ascertainability, numerosity, typicality, adequacy, predominance and superiority

2  requirements.

3      110.   Upon application by Plaintiffs' counsel for certification of the Plaintiff

4  Classes, the Court may also be requested to utilize and certify subclasses in the

5  interests of ascertainability, manageability, justice and/or judicial economy.

6      111.   <u>Ascertainability</u>.  This action may be properly brought and maintained

7  as a class action because there is a well-defined community of interest in the

8  litigation and the members of the proposed Classes are clearly and easily

9  ascertainable and identifiable.  The members of the Classes can be readily

10  ascertained from Defendant's payroll records, database files and business records

11  that Defendant Tatitlek is required by law to maintain.  The Class members can be

12  readily located and notified of this class action.

13      112.   <u>Numerosity</u>.  The number of persons within the Plaintiff Classes are

14  substantial, believed to amount to in excess of 1000 persons dispersed throughout

15  the United States.  It is, therefore, impractical to join each member of the Classes as

16  a named Plaintiff.  Further, the claims of the individual members of the Classes may

17  range in varying amounts based on the number of hours they worked and the

18  missions/assignments for which they were employed.  Accordingly, use of the class

19  action mechanism is the most economically feasible means of determining and

20  adjudicating the merits of this litigation.

21      113.   <u>Typicality</u>.  The claims of Plaintiffs are typical of the claims of the

22  members of the Classes, and Plaintiffs' interests are consistent with and not

23  antagonistic to those of the other Class members they seek to represent.  Plaintiffs

24  and all members of the Classes have been impacted by, and/or sustained lost wages

25  and other actual pecuniary loss.

26      114.   <u>Adequacy</u>.  The Plaintiff Class representatives have no interests that are

27  adverse to, or which conflict with, the interests of the absent members of the Classes

28  and are able to fairly and adequately represent and protect the interests of the

Blecher Collins
Pepperman & Joye

BC
PJ

Classes. Plaintiffs have raised viable statutory labor and unfair business practice claims of the type reasonably expected to be raised by members of the Classes, and will vigorously pursue those claims. If necessary, Plaintiffs may seek leave of this Court to amend this Complaint to include additional Class representatives to represent the Classes or additional claims as may be appropriate.

115. <u>Competency of Class Counsel</u>. Plaintiffs have retained and are represented by experienced, qualified and competent counsel who are committed to prosecuting this class action.

116. <u>Commonality and Predominance</u>. Common questions of fact and law exist as to all members of the Classes that predominate over any questions affecting only individual members of the Classes. These common legal and factual questions, which do not vary from Class member to Class member, and which may be determined without reference to the individual circumstances of any class member include, but are not limited to, the following:

(a) Whether Defendant Tatitlek unlawfully failed to provide its employees working at the Marine Corps base at Twentynine Palms, California with meal and/or rest periods;

(b) Whether Defendant Tatitlek unlawfully failed to pay one hour of pay to each of those employees working at the Marine Corps base at Twentynine Palms, California who were not provided with uninterrupted meal and/or rest periods;

(c) Whether Defendant Tatitlek violated Labor Code § 201 by not immediately paying its employees when it released them after they completed each specific job assignment for which they were hired;

(d) Whether Defendant Tatitlek unlawfully failed to pay its employees working at the Marine Corps base at Twentynine Palms, California overtime;

1   (e) Whether Defendant Tatitlek unlawfully caused employees working at

2   the Marine Corps base at Twentynine Palms, California to work more than

3   six days in seven;

4   (f) Whether Defendant Tatitlek unlawfully and willfully failed to pay

5   employees working at the Marine Corps base at Twentynine Palms,

6   California their total wages owed;

7   (g) Whether Defendant Tatitlek unlawfully failed to pay employees for

8   purported "sleep" time when Defendant Tatitlek did not enter into an

9   agreement with its employees to exclude from hours worked a bona fide

10   regularly scheduled sleeping period; and where the following non-

11   waiveable conditions were not satisfied: (1) the employee is able to enjoy

12   an uninterrupted five hours of sleep; and (2) any interruptions of the

13   sleeping period by a call to duty are counted as hours worked;

14   (h) Whether Defendant Tatitlek unlawfully failed to reimburse its

15   employees for expenses necessarily and reasonably incurred purchasing

16   lanterns, flashlights, and batteries to use for lighting at night when

17   Defendant Tatitlek required those employees to spend the night in re-

18   worked Connex metal boxes that did not have electricity or lighting;

19   (i)  Whether Defendant Tatitlek's policy and practice of failing to

20   reimburse employees working at the Marine Corps base at Twentynine

21   Palms, California for expenses they incurred as a direct consequence of

22   discharging their duties and/or obeying the directions of Defendant

23   Tatitlek is unlawful;

24   (j) Whether Defendant Tatitlek's policy and practice of failing to provide

25   accurate itemized wage statements as required by Labor Code § 226 to its

26   employees working at the Marine Corps base at Twentynine Palms,

27   California is unlawful;

28

(k) Whether Defendant Tatitlek unlawfully failed to pay employees it required to report to work on "Day Zero" of the training exercises the greater of: (1) half of the employee's usual or scheduled day's work (up to a maximum of four hours), or (2) two hours at the employee's regular rate of pay;

(l) Whether Defendant Tatitlek's conduct was unlawful and/or unfair in violation of California Business and Professions Code § 17200 et seq.;

(m) The appropriate measure of damages or restitution or disgorgement of profits; and

(n) The appropriate amount of monetary penalties arising from Defendant Tatitlek's violations of the California Labor Code.

117.   <u>Superiority</u>.  A class action is superior to other available methods for the fair and efficient adjudication of this controversy, since individual litigation of the claims of all class members is impracticable.  It is well-recognized that the class action procedure is the preferred method of resolving wage and hour claims.  Even if every member of the class could afford to pursue individual litigation, the Court system could not.  It would be unduly burdensome to the courts in which individual litigation of numerous cases would proceed.  Individualized litigation would also present the potential for varying, inconsistent or contradictory judgments, and would magnify the delay and expense to all parties and to the court system resulting from multiple trials of the same factual issues.  By contrast, the maintenance of this action as a class action, with respect to some or all of the issues presented herein, presents few management difficulties, conserves the resources of the parties and of the court system and protects the rights of each member of the class.  Plaintiffs anticipate no difficulty in the management of this action as a class action.

118.   Additionally, the prosecution of separate actions by individual Class members may create a risk of multiple adjudications with respect to them that would, as a practical matter, be dispositive of the interests of the other members of

Blecher Collins
Pepperman & Joye

BC
PJ

-28-

1  the class not parties to such adjudications or that would substantially impair or

2  impede the ability of such nonparty class members to protect their interests.  The

3  prosecution of individual actions by class members could establish inconsistent

4  results and result in establishing incompatible standards of conduct for Defendant.

**VI.**

**CLAIMS FOR RELIEF**

**FIRST CAUSE OF ACTION**

**FAILURE TO PROVIDE MEAL PERIODS AND REST PERIODS IN**

**VIOLATION OF CAL. LAB. CODE §§ 204, 226.7 AND 512**

10  119.   Plaintiffs restate and incorporate by reference as if fully set forth

11  herein, paragraphs 1 - 118, inclusive.

12  120.   As alleged above, Defendant failed to provide Plaintiffs with proper

13  meal periods and rest periods. This conduct of Defendants constitutes violations of

14  California Labor Code §§ 204 and 512.

15  121.   Pursuant to the relevant IWC Wage Order and California Labor Code §

16  226.7(b), Plaintiffs and other members of the Classes, are entitled to recover from

17  Defendant Tatitlek one hour of pay at the employees' regular rate of compensation

18  for each work day that a meal period was not provided and an additional one hour of

19  pay at the employees' regular rate of compensation for each work day that a rest

20  period was not provided.

21  122.   Plaintiffs and other members of the Classes are entitled to recover from

22  Tatitlek an award of interest, costs and reasonable attorneys' fees pursuant to

23  California Labor Code §§ 218.5, 218.6 and California Code of Civil Procedure §

24  1021.5

**SECOND CAUSE OF ACTION**

**TIMELY PAYMENT OF EARNED WAGES IN VIOLATION OF**

**CAL. LAB. CODE §§ 201 & 203**

28  123.   Plaintiffs restate and incorporate by reference as if fully set forth

Blecher Collins Pepperman & Joye

herein, paragraphs 1 - 122, inclusive.

124.   Labor Code § 203 provides that if an employer willfully fails to pay compensation upon discharge, as required by § 201 or § 202, then the employer is liable for waiting time penalties in the form of continued compensation of up to 30 work days.

125.   Defendant Tatitlek willfully failed and refused to timely pay compensation and wages, including unpaid meal and break period compensation, and overtime compensation at the end of the final day of work for each mission worked by the Plaintiffs and other Class members.  Based on these violations, Plaintiffs and Class members are entitled to the continuing wages specified by California Labor Code § 203.

**THIRD CAUSE OF ACTION**

**FAILURE TO PAY EARNED WAGES AND OVERTIME COMPENSATION IN VIOLATION OF CAL. LAB. CODE §§ 204, 210, 218, 510, 1194 AND 1198**

126.   Plaintiffs restate and incorporate by reference, as if fully set forth herein, paragraphs 1-125, inclusive.

127.   Labor Code § 204 requires employers to pay employees for all hours worked as follows: "all wages….. earned by any person in any employment are due and payable twice during each calendar month, on days designated in advance by the employer as the regular paydays."  Labor Code § 510 further provides that employees in California shall not be employed more than eight hours in any workday or 40 hours in a workweek unless they receive additional compensation beyond their regular wages in amounts specified by law.

128.   Labor Code §§ 218 and 1194 establish an employee's right to recover unpaid wages overtime compensation, interest thereon, together with the costs of suit, and attorney's fees.

129.   As set forth herein, Defendant's policy and practice was to intentionally and uniformly deny payment to Plaintiffs for all hours worked, and further to fail to

pay overtime compensation for hours worked in excess of eight hours in a day and/or forty hours in a workweek.  This was done in an illegal attempt to avoid payment of earned wages, overtime compensation and other benefits in violation of the Cal. Lab. Code and Industrial Welfare Commission requirements.

130.   Plaintiffs worked more hours than they were paid for, constituting a failure to pay all earned wages.

131.   Plaintiffs worked more than eight hours in a workday, and/or more than 40 hours in a work week.

132.   At all relevant times, Defendant failed to pay Plaintiffs' wages for the hours they had worked as required by Labor Code §§ 204 and 218, and overtime compensation for the hours he had worked in excess of the maximum hours permissible by law as required by Labor Code §§ 510 and 1198.

133.   By virtue of Defendant's unlawful failure to pay additional compensation to the Plaintiff, for the hours actually worked, Plaintiffs have suffered, and will continue to suffer, an economic injury in amounts which are presently unknown to them and which will be ascertained according to proof at trial.

134.   Defendant knew, or should have known, that Plaintiffs performed hours of overtime work, but despite that knowledge, systematically elected, either through intentional malfeasance or gross nonfeasance, not to pay them for their labor as a matter of uniform corporate policy, practice and procedure.

135.   As a result of Defendant's failure to pay Plaintiffs and other members of the Class their unpaid overtime compensation as alleged herein, Plaintiffs and other members of the Classes are entitled to recover their unpaid overtime under § 1194 of the California Labor Code, along with interest thereon, attorney's fees and costs.

## FOURTH CAUSE OF ACTION

## VIOLATION OF FAIR LABOR STANDARDS ACT (29 U.S.C. § 216)

136.   Plaintiffs restate and incorporate by reference as if fully set forth

herein, paragraphs 1 - 135, inclusive.

137.   The Fair Labor Standards Act, 29 U.S.C., §§ 201, et seq., states that an employee must be compensated for all hours worked, including all straight time compensation and overtime compensation.  2 C.F.R. § 778.315.  This Court has original jurisdiction over claims involving the Fair Labor Standards Act pursuant to 29 U.S.C. § 216.

138.   As alleged above, Plaintiffs were paid by Defendant on an hourly basis at a regular and agreed hourly rate.  Plaintiffs worked more than 40 hours per week, but were not paid compensation for all hours worked, including overtime hours.

139.   Based on these violations, Plaintiffs and members of the Classes are entitled to recover their unpaid overtime, liquidated damages, attorney's fees and costs under 29 U.S.C. § 216.

## FIFTH CAUSE OF ACTION

## REIMBURSEMENT OF BUSINESS EXPENSES (CAL. LAB. CODE § 2802)

140.   Plaintiffs restate and incorporate by reference as if fully set forth herein, paragraphs 1 - 139, inclusive.

141.   California Labor Code § 2802(a) provides that an employer shall indemnify his or her employee for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties, or of his or her obedience to the directions of the employer, even though unlawful, unless the employee, at the time of obeying the directions, believed them to be unlawful.

142.   As alleged herein and in violation of Labor Code § 2802, Defendant Tatitlek required its employees to spend the night in re-worked Connex boxes that did not have electricity or lighting.  As a consequence, the employees necessarily and reasonably had to purchase lanterns, flashlights, and batteries to use for lighting at night.  Defendant Tatitlek violated Labor Code § 2802 by not indemnifying or reimbursing the Plaintiffs and putative members of the Classes for these expenses.

-32-

## SIXTH CAUSE OF ACTION

## FAILURE TO PROVIDE ACCURATE ITEMIZED WAGE STATEMENTS IN VIOLATION OF LABOR CODE § 226

143.   Plaintiffs restate and incorporate by reference as if fully set forth herein, paragraphs 1 - 142, inclusive.

144.   Defendant Tatitlek either recklessly or intentionally failed to make, keep and preserve true, accurate and complete wage statement records and/or furnish such records to its employees pursuant to the requirements of California Labor Code § 226(a).

145.   Plaintiffs and the other members of the Class therefore, are entitled to recover the damages specified in Labor Code § 226, along with attorneys' fees and costs.

## SEVENTH CAUSE OF ACTION

## FAILURE TO PROVIDE CONTINUING WAGES IN VIOLATION OF LABOR CODE §§ 201, 202, AND 203

146.   Plaintiffs restate and incorporate by reference as if fully set forth herein, paragraphs 1 - 145, inclusive.

147.   As alleged above, because Defendant Tatitlek failed to pay proper meal and rest period wages, failed to pay proper wages for off-the-clock work, and failed to pay all outstanding overtime wages, the Role Player employees were not provided with all wages due and owing upon termination of their employment.

148.   Based on these violations, Plaintiffs and those members of the Meal-Period Class, the Rest-Period-Class, the Off-the-Clock Class, and the Miscalculation Class who are former employees are entitled to the continuing wages specified in § 203 of the Labor Code.

## EIGHTH CAUSE OF ACTION

## VIOLATION OF SECTION 5 OF CALIFORNIA IWC WAGE ORDER – REPORTING TIME AND "SHOW UP" PAY LAW

149.   Plaintiffs restate and incorporate by reference as if fully set forth herein, paragraphs 1 - 148, inclusive.

150.   Section 5 of California's IWC Wage Orders (California's "reporting time" or "show up" pay law) provides that each workday that an employee is required to report for work and does report, but is not put to work or is furnished less than half, that employee's usual or scheduled day's work. The employee shall be paid for half the usual or scheduled day's work, but in no event for less than two hours nor more than four hours, at the employee's regular rate of pay.

151.   Defendant Tatitlek violated Section 5 of California's IWC Wage Order (California's "reporting time" or "show up" pay law) by requiring Plaintiffs and members of the Class the greater of: (1) half the employee's usual or scheduled day's work (up to a maximum of four hours), or (2) two hours at the employee's regular rate of pay.

152.   By the aforesaid acts and omissions of Defendant, Plaintiffs and the putative members of the Classes have suffered damages, as well as attorney's fees and costs.

## NINTH CAUSE OF ACTION

## UNFAIR COMPETITION IN VIOLATION OF CAL. BUS. & PROF. CODE § 17200, *et seq.*

153.   Plaintiffs restate and incorporate by reference as if fully set forth herein, paragraphs 1 - 152, inclusive.

154.   California Business and Professions Code section 17200 et seq. prohibits acts of unfair competition, including any unlawful, unfair, or fraudulent business act or practice."  Plaintiffs allege that Defendant has engaged in unfair and/or unlawful business practices by the above-described failures to pay proper

Blecher Collins Pepperman & Joye

BC PJ

meal and rest period wages, proper compensation for off-the-clock work, overtime compensation, and expense reimbursement, resulting in their suffering actually economic harm by reason of Defendant's conduct.

155.   The named Plaintiffs herein are "persons" within the meaning of California Business & Professions Code section 17201.

156.   As alleged herein, Defendant's conduct constitutes an "unfair" business act or practice.  A practice may be deemed unfair even if not specifically proscribed by some other law.  Defendant's compensation policies and practices offend public policy and violate the strict mandates of the California Labor Code and other statutes and Wage Orders.  These compensation practices have caused substantial injury to Plaintiffs and are immoral, unethical, oppressive, and/or unscrupulous.  Further, Plaintiffs and Class members could not have reasonably avoided the injury each of them has sustained.

157.   Defendant's unfair and/or unlawful compensation practices results in Defendant keeping earned, but unpaid, wages without justification.  Because the Defendant's compensation practices/policies permit it to retain monies earned by its Role Player employees, it may be deemed to be an unfair and/or unlawful practice under § 17200.

158.   As alleged herein, Defendant's conduct also constitutes an "unlawful" business practice within the meaning of § 17200.  Virtually any violation of any civil or criminal federal, state or municipal, statutory, regulatory, court-made or local law can serve as a predicate for an "unlawful" claim.  Defendant's violations of one or more provisions of the Labor Code and other statutes and Wage Orders, as alleged herein, satisfy the "unlawful" prong of § 17200.

159.   The UCL is a strict liability statute and it is not necessary to show that Defendant intended to injure or harm Plaintiffs.

160.   By reason of, and as a direct and proximate result of Defendant's unfair and/or unlawful practices and conduct, Plaintiffs have suffered actual financial or

Blecher Collins
Pepperman & Joye

economic injury in fact in the form of reduced wages. Plaintiffs and the Class members are entitled to equitable relief in the form of full restitution of all earned wages that Defendant Tatitlek has withheld from Plaintiffs and Class members resulting from unfair and/or unlawful business acts or practices. Plaintiffs also request an award of prejudgment interest.

161.   Based on these violations, Plaintiffs seek restitution from Defendant to restore any and all amounts withheld, acquired, or converted by Defendant by means of the unfair and/or unlawful practices complained of herein. In addition, Plaintiffs, on behalf of themselves and other similarly situated employees, as well as on behalf of the general public, further seek interest thereon, attorney's fees , and costs pursuant to Labor Code §§ 218.5 and 218.5, and California Code of Civil Procedure § 1021.5. In addition, Plaintiffs seek the appointment of a receiver as necessary.

## VII.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs on behalf of themselves and all other members of the Classes pray that this Court adjudge and decree as follows:

1.     That the Court certify the Meal-Period, Rest-Period, Miscalculation, Reimbursement, Inaccurate Wage Statement, Continuing Wages and Off-the Clock or Day Zero Classes under Federal Rule of Civil Procedure 23.

2.     That the Court certify the Federal-Law Overtime Class pursuant to 29 U.S.C. § 216.

3.     That the Court certify and appoint Plaintiffs Mortaza Mohammad Noorzay, Mohammad Omar Khamosh; Mohammad Omar Noorzay; and Mina Ghafoorzai as representative Plaintiffs for Meal-Period, Rest-Period, Miscalculation, Reimbursement, Inaccurate Wage Statement, Continuing Wages, Off-the Clock or Day Zero Classes, and Federal-Law Overtime Classes.

4.     With respect to the First Claim for Relief, that the Court enter judgment in favor of Plaintiffs, the Meal-Period Class, and the Rest-Period Class for the

1  period of time January 25, 2011 to the filing of the Complaint for unpaid meal-

2  period and rest-period wages, including interest thereon according to proof.

3       5.     With respect to the Second Claim for Relief, that the Court enter

4  judgment in favor of Plaintiffs and the Continuing Wages Class for the period of

5  time commencing January 25, 2011 to the filing of the Complaint for 30 days wages

6  for each mission assignment, interest thereon, attorney's fees, and costs, all

7  according to proof.

8       6.     With respect to the Third Claim for Relief, that the Court enter

9  judgment in favor of Plaintiffs and the Miscalculation Class for the period of time

10 commencing January 25, 2011 to the filing of the Complaint for unpaid overtime,

11 interest thereon, attorney's fees, and costs, all according to proof.

12      7.     With respect to the Fourth Claim for Relief, that the Court enter

13 judgment in favor of Plaintiffs and the Federal-Law Overtime Class for the period of

14 time commencing three years prior to the filing of the Complaint for unpaid

15 overtime, liquidated damages, attorney's fees, and costs, all according to proof.

16      8.     With respect to the Fifth Claim for Relief, that the Court enter

17 judgment in favor of Plaintiffs and the Reimbursement Class for the period of time

18 commencing January 25, 2011 to the filing of the Complaint for their unreimbursed

19 expenses, interest thereon, attorney's fees, and costs of suit, all according to proof.

20      9.     With respect to the Sixth Claim for Relief, that the Court enter

21 judgment in favor of Plaintiffs, the Meal-Period Class, the Rest-Period Class, the

22 Off-the-Clock Class, and the Miscalculation Class for the period of time

23 commencing January 25, 2011 to the filing of the Complaint for pay-stub damages,

24 attorney's fees, and costs, all according to proof.

25      10.    With respect to the Seventh Claim for Relief, that the Court enter

26 judgment in favor of Plaintiffs, the Meal-Period Class, the Rest-Period Class, the

27 Off-the-Clock Class, and the Miscalculation Class for the period of time

28 commencing January 25, 2011 to the filing of the Complaint for continuing wages

Blecher Collins
Pepperman & Joye

1    according to proof.

2        11.    With respect to the Eighth Claim for Relief, the Court enter judgment

3    in favor of Plaintiffs and the Off-the-Clock or "Day Zero" Class for the period of

4    time commencing January 25, 2011 to the filing of the Complaint, interest therein,

5    attorney's fees and costs.

6        12.    With respect to the Ninth Claim for Relief, that the Court enter

7    judgment in favor of Plaintiffs, the Meal-Period Class, the Rest-Period Class, the

8    Off-the-Clock Class, and the Miscalculation Class for the period of time

9    commencing January 25, 2011 to the filing of the Complaint for restitution in the

10   form of unpaid wages, as well as interest thereon, injunctive relief, attorney's fees,

11   and costs, all according to proof.

12       13.    That the Court appoint Plaintiffs' attorneys of record as Class

13   Counsel.

14       14.    That the Court award Plaintiffs and the members of the Classes

15   prejudgment interest at the maximum rate allowable by law.

16       15.    That the Court award Plaintiffs and the members of the Classes such

17   other and further relief as is just and proper, including attorney's fees, costs, and

18   interest pursuant to Labor Code sections 218.5 and 218.6, and Code of Civil

19   Procedure section 1021.5.

20

21   Dated:  December 30, 2014          BLECHER COLLINS PEPPERMAN &
                                        JOYE, P.C.
22                                      MAXWELL M. BLECHER
23                                      DONALD R. PEPPERMAN
                                        HOWARD K. ALPERIN
24

25

26                                By:  _____/s/ *Maxwell M. Blecher*_____
                                          Maxwell M. Blecher
27                                        Attorneys for Plaintiffs

28

Blecher Collins
Pepperman & Joye

1   Dated:  December 30, 2014         FULLERTON & HANNA, LLP
2                                     LAWRENCE J. HANNA
                                      DAPHNE M. STEGMAN
3                                     MIRREN L. STEGMAN-WISE

4

5                                     By:   ___/s/ *Lawrence J. Hanna*___
6                                                 Lawrence J. Hanna
                                              Attorneys for Plaintiffs
7
66373.6
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Blecher Collins
Pepperman & Joye

## **DEMAND FOR JURY TRIAL**

Plaintiffs hereby demand trial by jury pursuant to Federal Rule of Civil Procedure 38(b) and Local Rule 38-1 as to all claims triable before a jury.

Dated:  December 30, 2014

BLECHER COLLINS PEPPERMAN & JOYE, P.C.
MAXWELL M. BLECHER
DONALD R. PEPPERMAN
HOWARD K. ALPERIN


By:  _____/s/ *Maxwell M. Blecher*_____
                Maxwell M. Blecher
                Attorneys for Plaintiffs

Dated:  December 30, 2014

FULLERTON & HANNA, LLP
LAWRENCE J. HANNA
DAPHNE M. STEGMAN
MIRREN L. STEGMAN-WISE


By:  _____/s/ *Lawrence J. Hanna*_____
                Lawrence J. Hanna
                Attorneys for Plaintiffs

Blecher Collins Pepperman & Joye